UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **10-24028-CIV-MORENO**

CHELSEA FOOTBALL CLUB LIMITED

    Petitioner,

vs.

ADRIAN MUTU

    Respondent.
_____/

## ORDER RECOGNIZING AND ENFORCING INTERNATIONAL ARBITRATION AWARD

Chelsea Football Club Limited petitioned this Court to recognize and enforce the arbitral award rendered by the Court of Arbitration for Sport seated in Switzerland. Chelsea seeks €17,173,990 plus interest that the Arbitral Tribunal awarded. Respondent Adrian Mutu argues that enforcement of this award is contrary to public policy because it relies on a contractual penalty clause. Respondent has failed to show that enforcement would violate the most basic notions of morality and justice.

## FACTUAL BACKGROUND

Adrian Mutu is a soccer player. He played for the Italian AC Parma club until August of 2003, when he was transferred to the Chelsea Football Club of the English Premiere League. Chelsea paid AC Parma a transfer fee of £22.5 million. Chelsea entered into a contract with Mutu that was to last five years and pay Mutu £2.35 million annually. He would also incrementally receive a £330,000 signing-bonus and his agent would be paid €500,000

incrementally. The employment contract started on August 11, 2003 and was to expire on June 30, 2008. But on October 1, 2004 Mutu tested positive for cocaine. Chelsea terminated Mutu's contract and Mutu was temporarily banned from play worldwide by FIFA, the Fédération Internationale de Football Association, the world's governing body of football.

Mutu appealed Chelsea's decision. First, he appealed with the Board of Directors of the Premier League. The Board assigned the matter to its Appeals Committee. In April of 2005, the Committee decided that Mutu breached his contract without just cause. Mutu filed an appeal with the Court of Arbitration for Sport ("CAS"). It dismissed the appeal.

In May of 2006, Chelsea applied to FIFA for an award of compensation. Initially, FIFA's Dispute Resolution Chamber ("DRC") decided it did not have jurisdiction. Chelsea filed action to annul the FIFA decision with the Court of Arbitration for Sport. That court upheld the appeal and sent the matter back to the DRC in May of 2007. Chelsea resubmitted a claim, Mutu submitted a brief, and in May 2008, the DRC issued a decision awarding Chelsea €17,173,990 plus 5% interest per annum. The award's amount corresponds with the unamortized portions of the transfer fee, the signing bonus and the agent's fee.

In 2008, Mutu filed an appeal with CAS. The parties made submissions in support of their cases and a hearing was held in May of 2009. Mutu requested the DRC award be set aside because controlling English law was not properly applied. The appeal was dismissed.

Mutu then sought to vacate the arbitral award before the Swiss Federal Supreme Court. That court rejected Mutu's arguments and lifted a stay of enforcement of the arbitral award.

Chelsea then filed the present Petition seeking recognition and enforcement of the CAS award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards ("The New York Convention").

## STANDARD OF REVIEW

The New York Convention empowers a federal district court to recognize and enforce an action falling under the Convention. *See* 9 U.S.C. §203. Chapter 2 of the Federal Arbitration Act incorporates into federal law the New York Convention in order to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Where an arbitral award exists, it is to be confirmed unless a respondent can successfully assert one of seven defenses against enforcement. *See Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335-36 (5th. Cir.1976). The defense relevant to this matter states that "recognition or enforcement of the award would be contrary to the public policy" of the United States. New York Convention, art. 5(2)(b).

When reviewing an arbitration award, "[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir.2007).

## DISCUSSION

In this case it is uncontested that the award includes the unamortized portions of the acquisition fee, the signing bonus and the agent's fee. Though cast as penal by Mutu, the

-3-

unamortized costs are reasonably related to the actual damages caused by Mutu's breach of contract. In a case cited by Mutu, it is stated "the amount of stipulated damages must be reasonably related to the actual damages caused by a breach; otherwise, the clause becomes a penalty for a breach, and, thus, is void as against public policy." *Int'l Ins. Co. v. Jones*, 874 F.2d 1447, 1457 (11th Cir.1989); *see also Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 226, 50 S.Ct. 142, 74L.Ed. 382 (1930.) Here, the Court for Arbitration of Sports reasonably relates the arbitral award to the actual damages, providing its rationale that "a club that paid a substantial fee to former club to secure the services of a player may suffer severe financial consequences if that player unilaterally breaches his contract."

The inclusion of actual costs in calculating damages for an arbitral award does not "so offend public policy" that it should be set aside since "[a]n arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Delta Air Lines v. Air Line Pilots Ass'n, Intern.*, 861 F.2d 665, 670 (11th Cir. 1988). There is nothing so unjust about an award drawn from actual damages that "enforcement would violate . . . basic notions of morality and justice." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir.1974). Mutu's argument focuses on proportionality of the transfer fee Chelsea paid without addressing that fee's reasonable relation to actual damages suffered by Chelsea. The vast difference between the transfer fee paid to AC Parma and the salary or bonus paid Mutu does not represent a penalty when those figures are used to establish actual damages. The Court for Arbitration's award calculation is related to damages caused by Mutu's breach of contract. This does not violate public policy.

Mutu's challenge to recognition of the arbitral award fails on another front. Mutu argues the arbitral award is based on a penalty clause within the Article 22 of the FIFA regulations and such a clause is unenforceable. The award was simultaneously formed under English law pursuant to the choice-of-law provision in the contract between Mutu and Chelsea. Mutu provides no argument against the award's determination under English law. The Court for Arbitration of Sport states "that the determination of the amount of compensation that a player breaching an employment has to pay can be based on the unamortised acquisition costs, and that such operation is fully consistent . . . with English law." Even if this Court were to find Article 22 to be a penalty clause, it is uncontested that the arbitration award was independently and properly decided pursuant to English law.

## CONCLUSION

The award was determined by an arbitrator. The Court of Arbitration for Sport's rationale and award do not violate the public policy of this jurisdiction. Therefore it is

ADJUDGED that the arbitration award is CONFIRMED.

DONE AND ORDERED in Chambers at Miami, Florida, this 13 day of February, 2012.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record